## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WAYNE L. BRISCOE,<br><br>        **Plaintiff,**<br><br>v.<br><br>COHEN, MCNEILE & PAPPAS, P.C.,<br><br>        **Defendant.** | Case No. 14-2146-DDC-KGG |

## MEMORANDUM AND ORDER

Plaintiff Wayne L. Briscoe brings this lawsuit against defendant Cohen, McNeile & Pappas, P.C., alleging two claims—one for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., and the other for violation of the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623, *et seq*.—arising from defendant's attempts to collect a debt from plaintiff.[1]  This matter comes before the Court on defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. 13).  After considering the arguments made by both parties, the Court grants in part and denies in part defendant's Motion to Dismiss.

### I.    Factual Background

The following facts are taken from plaintiff's Second Amended Complaint (Doc. 11) and the Court views them in the light most favorable to him.  *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff].") (quotation omitted).  During the times

---

[1]    Plaintiff also named The Baldwin State Bank as a defendant in this lawsuit.  On June 13, 2014, plaintiff filed an Amended Stipulation of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1) stating that plaintiff, defendant The Baldwin State Bank, and defendant Cohen, McNeile & Pappas, P.C. stipulate to the dismissal of plaintiff's claims against The Baldwin State Bank only, with prejudice (Doc. 27).  Thus, defendant Cohen, McNeile & Pappas, P.C. is the only remaining defendant in the case.

relevant to this lawsuit, plaintiff maintained two bank accounts at The Baldwin State Bank ("Bank")—a personal account and a business account for Resources Advantages in Telecommunications Enterprises, Inc., also known as R.A.T.E., Inc.  On or around July 29, 2010, plaintiff obtained a personal loan from the Bank in the amount of $8,450.00.  After plaintiff defaulted on that loan, the Bank, attempting to satisfy partially plaintiff's outstanding personal loan, seized funds from R.A.T.E., Inc.'s business account in the amount of $1,500.00.  In June 2011, the Bank turned the personal loan account over to a collection agency, Shaffer & Associates.  Shaffer & Associates then hired defendant to initiate legal action against plaintiff to collect the amount owed on the personal loan.

On June 16, 2012, defendant sent a letter to plaintiff at his current address of 9890 Evening Star Road, Eudora, Kansas, 66025 ("the Eudora Address").  (Plaintiff has resided at the Eudora Address from 2007 to the present.)  The letter stated that plaintiff had an account balance of $8,007.38 with the Bank and that the debt had been referred to defendant for collection.  The letter also demanded payment of the debt.  James McNeile, an attorney who practices with defendant law firm, signed the letter.

In September 2012, defendant, acting as legal counsel for the Bank, filed a lawsuit against plaintiff in the District Court of Douglas County, Kansas.  In the caption of this lawsuit, defendant stated that plaintiff resided at 239 E. 1000th Road, Baldwin City, Kansas, 66006 ("the Baldwin City Address").  Plaintiff has never lived at the Baldwin City Address.  Defendant also attached several exhibits to the Petition filed in that lawsuit, including an Affidavit of Account and Verification of Business Records from the Bank's President, Tom Dillon, and the Bank's account summary of plaintiff's personal loan account.  The account summary stated that plaintiff resided at the Eudora Address.

2

Although the account summary stated that plaintiff resided at the Eudora Address, defendant attempted to serve plaintiff with the lawsuit at the Baldwin City Address.  In September of 2012, defendant filed a Service Instruction Form which instructed the Douglas County Sheriff to serve process at the Baldwin City Address.  The Summons and the Return of Service of Summons also listed the Baldwin City Address.

 When plaintiff failed to appear or file a timely answer in the lawsuit, defendant took a default judgment.  On September 28, 2012, defendant prepared, signed and filed a Journal Entry of Judgment certifying "that the file in the . . . case" reflected that plaintiff was properly served with summons or process on September 13, 2012.[2]  However, plaintiff was never served in the lawsuit because defendant instructed the Sheriff to serve him at an address where he had never resided (the Baldwin City Address).  The District Court of Douglas County, Kansas entered a default judgment against plaintiff in the principle sum of $7,055.91, plus post-judgment interest at the rate of 15.250% per annum and attorney's fees of $250.00.[3]

On December 18, 2012, defendant prepared, signed and filed a Request for Garnishment in Douglas County, Kansas, for service on plaintiff's employer, Sprint United Management Co.  In that document, defendant listed plaintiff's address as the Baldwin City Address, although he never resided at that location.  On January 8, 2013, the District Court of Douglas County, Kansas entered an Order of Garnishment in the amount of $7,612.55, and the District Court of Johnson County, Kansas received it on January 14, 2013.  The Request for Garnishment also listed

---

[2]       Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. C (Doc. 14-3).  The Court may take judicial notice of public records from other proceedings.  *Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, 931 F. Supp. 2d 1120, 1123 (D. Kan. 2013) (citing *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *Hemphill v. Kimberly-Clark Corp.*, 605 F. Supp. 2d 183, 186 (D.D.C. 2009)).  The Court also may consider this document because plaintiff incorporated it into his Second Amended Complaint by reference (Doc. 11 at ¶ 39), it is central to the plaintiff's claim, and the parties do not dispute its authenticity.  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

[3]       Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. C (Doc. 14-3).

plaintiff's address incorrectly, showing the Baldwin City Address.  On January 15, 2013, defendant filed a Notice of Service of Notice to Judgment Debtor for service on plaintiff.  In that document, defendant again listed plaintiff's address incorrectly, showing the Baldwin City Address.

On January 29, 2013, the Sheriff served the Order of Garnishment on Sprint United Management Co.  In response to the garnishment order, plaintiff's employer deducted amounts from plaintiff's paycheck five separate times:  (1) $278.32 on February 1, 2013; (2) $278.51 on February 15, 2013; (3) $172.69 on February 28, 2013; (4) $278.94 on March 1, 2013; and (5) $278.51 on March 15, 2013.  The total amount garnished from plaintiff's wages was $1,286.97.

On February 12, 2013, plaintiff filed a pro se motion in the lawsuit pending in the District Court of Douglas County, Kansas, titled "Motion for Relief From Judgment Pursuant to K.S.A. Chapter 60."[4]  In that motion, plaintiff stated that the Summons and Return of Service filed in the lawsuit showed that plaintiff was served at the Baldwin City Address, where plaintiff claimed he never resided.  Therefore, plaintiff argued that the service was defective.

In February of 2013, plaintiff filed a complaint against the Bank with the Kansas Office of the State Bank Commissioner.  On March 3, 2013, the Bank wrote a check to R.A.T.E., Inc. in the amount of $1,500.00.  On March 25, 2013, defendant filed a Satisfaction of Judgment in the lawsuit pending in the District Court of Douglas County, Kansas, stating that defendant acknowledged full and complete satisfaction of the judgment.  On April 22, 2013, defendant wrote a check to plaintiff in the amount of $1,286.97.

On or about February 1, 2014, the Bank reported account information to TransUnion and Equifax about plaintiff's personal loan account with the Bank.  Consequently, reports from these

---

[4]        Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. E (Doc. 14-5).

credit agencies show that plaintiff's personal loan account had an outstanding balance of $7,055.00 and a past due amount ($10,858.00 for TransUnion and $10,940.00 for Equifax).

## II.    Legal Standard

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'"  *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the Court must assume that the factual allegations in the complaint are true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678).  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference.  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)) (further citations omitted).  A court "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"  *Id.* (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)) (internal quotation omitted).

With its motion, defendant has submitted evidence outside the pleadings in the form of an affidavit signed by Bryan Butell, Executive Vice President of the Bank.  Ex. A to Def.'s Mem. in Supp. of Mot. to Dismiss (Doc. 14-1).  Generally, when "matters outside the pleadings are presented to and not excluded by the court [in deciding a motion under Rule 12(b)(6)], the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The Court has discretion to accept or reject documents attached to a motion to dismiss pursuant to Rule 12(b)(6).  *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341 (10th Cir. 2000) (citations omitted).  Here, the Court rejects Butell's affidavit and considers defendant's arguments in the context of a motion to dismiss for failure to state a claim.  The Court declines to consider this evidence in determining whether plaintiff has failed to state a claim upon which relief may be granted.

## III.    Analysis

Plaintiff brings two claims against defendant in this lawsuit:  (1) violation of the FDCPA, 15 U.S.C. § 1692, *et seq*. and (2) violation of the KCPA, K.S.A. § 50-623, *et seq*.  Defendant moves the Court to dismiss both claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  The Court addresses each claim in turn below.

## A.  Fair Debt Collections Practices Act Claim

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  "Generally, in connection with the collection of a debt, the FDCPA prohibits debt collectors from (1) engaging in harassing, oppressive or abusive conduct; (2) using false, deceptive or misleading representations or means; and (3) using unfair or unconscionable means."  *Dillon v. Riffel-Kuhlmann*, 574 F. Supp. 2d 1221, 1223 (D. Kan. 2008) (citing *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) (citing 15 U.S.C. §§ 1692d, 1692e, 1692f)).  The FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation."  *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

Plaintiff alleges that defendant violated § 1692d, § 1692e, and § 1692f of the FDCPA based on defendant's failure to serve him at his correct address in the lawsuit defendant filed in the District Court of Douglas County, Kansas.  Section 1692d prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."  While plaintiff contends that he has alleged a claim for violations of these sections of the FDPCA, he fails to provide the Court with any legal authority to support his argument that defendant's failure to serve him at the correct address in a debt collection action is sufficient to state a claim.

The Court recognizes, though, that other courts have allowed FDCPA claims to proceed when the plaintiff alleges that the defendant engaged in "sewer service," which is "defined as 'failing to serve a debtor and filing a fraudulent affidavit attesting to service so that when the debtor later fails to appear in court, a default judgment is entered against him.'" *Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065, 1068 n.1 (N.D. Cal. 2011) (quoting *Spiegel v. Judicial Atty. Servs.*, No. 09 C 7163, 2011 WL 382809, at *1 (N.D. Ill. Feb. 1, 2011)).  Our Court has explained the origin of this term:

> In jurisdictions such as New York, where process need not be served by a public official, the bulk of the business of serving process gravitates into the hands of professional process servers.  Some of these process servers once followed a practice of disposing of process given them to serve (e.g., by throwing it down a sewer) and then falsely returning that they had duly served it.  Although it is completely illegal, this practice once had particularly widespread use in New York in cases brought to collect consumer obligations.  In 1973, changes in the law dealing with proof of service to require more detailed statements relating to how the process was served were enacted as a means of curbing such abuses.

*Richardson v. Alliance Tire and Rubber Co., Ltd.*, 158 F.R.D. 475, 480 n.5 (D. Kan. 1994) (quoting 1 Robert C. Casad, *Jurisdiction in Civil Actions* § 3.01[7][d] (2d ed. 1991)).

For example, in *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 934–35 (N.D. Cal. 2013), the plaintiff successfully stated a claim for violation of the FDCPA against defendants who allegedly manufactured and sold fraudulent proof of services and summons that falsely stated that plaintiff was personally served with a summons and complaint when, in fact, plaintiff was not served.  In these "sewer service" cases, the plaintiffs alleged that the defendants made deliberately false statements in the proofs of service of summons by attesting that they had served the plaintiffs when they had not.  *See*, *e.g.*, *Long v. Nationwide Legal File & Serve, Inc.*, No. 12–CV–03578–LHK, 2014 WL 3809401, at *1 (N.D. Cal. July 23, 2014) (process server completed and signed a proof of service of summons attesting that he had personally served

plaintiff, a "Black, Male, 35 Years Old, Black Hair, Brown Eyes, 5 Feet 9 Inches, 180 Pounds," but plaintiff submitted evidence showing that he was 68 years old at the time of purported service, is East Indian, and he had not lived at the address listed on the proof of service for almost a year at the time of purported service); *Holmes*, 966 F. Supp. 2d at 928 (FDCPA plaintiff alleged that defendant filed a false proof of service stating that plaintiff had been served and describing her as "a female Caucasian, 50-years-old, with brown hair and brown eyes, 5 feet 8 inches tall, and weighing 165 pounds" but plaintiff was 62 years old with blond hair and blue eyes and weighed 125 pounds); *Sanchez v. Abderrahman*, No. 10–cv–3641 (CBA), 2012 WL 1077842, at *13 (E.D.N.Y. Mar. 30, 2012) (plaintiffs stated a claim for violation of the FDCPA where they alleged that defendant "did not serve or attempt to serve process at all, but instead merely filed a false affidavit claiming they had."); *Sykes v. Mel Harris and Assoc., LLC*, 757 F. Supp. 2d 413, 424 (S.D.N.Y. 2010) (plaintiff stated plausible claim for violation of the FDCPA against a law firm who allegedly filed false affidavits attesting to service to secure default judgments against consumers).

In contrast, here, plaintiff has not alleged fraudulent activity by defendant to support a violation of the FDCPA under a theory that defendant was engaging in "sewer service."  While plaintiff contends that defendant elected to serve him at the Baldwin City Address although there was "overwhelming evidence" in his personal loan records that he resided at the Eudora residence (Pl.'s Sec. Am. Compl. at ¶ 35 (Doc. 11)), plaintiff does not allege that defendant instructed the Sheriff to serve him at the incorrect address *for the purpose* of obtaining a default judgment fraudulently or that defendant filed the Journal Entry of Judgment certifying that plaintiff had been served with process when it *actually knew* he was not served.[5]  Plaintiff also

---

[5]     Defendant's Memorandum in Support of its Motion to Dismiss states that it was "operating under the belief that plaintiff resided at [the Baldwin City Address], not [the Eudora Address]."  Doc. 14 at 3.

does not allege that defendant filed a false Return of Summons attesting to service, when it had not actually served plaintiff.[6]  As such, plaintiff has not alleged a claim for violation of the FDCPA under the "sewer service" theory recognized by this line of cases.

Next, the Court must determine whether defendant violated the FDCPA by serving plaintiff at an incorrect address, taking a judgment against plaintiff (although service was defective), and garnishing plaintiff's wages based on that judgment.  Our Court has previously concluded there is "no support for the proposition that pursuing a collection action without serving the debtor constitutes a violation of the FDCPA."  *Dillon v. Riffel-Kuhlmann*, 574 F. Supp. 2d 1221, 1223 (D. Kan. 2008).  In *Dillon*, the plaintiff alleged the defendant had violated the FDCPA by not serving process on him in a state collection action.  *Id.*  Judge Vratil noted that the FDCPA generally prohibits debt collectors from "(1) engaging in harassing, oppressive or abusive conduct; (2) using false, deceptive or misleading representations or means; and (3) using unfair or unconscionable means."  *Id.* (citing *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) (citing 15 U.S.C. §§ 1692d, 1692e, 1692f and noting that the "substantive heart of FDCPA lies in these prohibitions")).  In this case, Judge Vratil granted summary judgment to defendant on the FDCPA claims, explaining that "the failure to comply with service of process

---

Defendant recognizes, however, that the Court must accept as true the facts alleged in plaintiff's Complaint when considering this Motion to Dismiss.  *Id.*  Thus, when deciding this Motion to Dismiss, the Court does not consider defendant's statement about its beliefs surrounding plaintiff's current address.

[6]      Plaintiff has attached the Return of Service of Summons to his Memorandum in Opposition to Defendant's Motion to Dismiss (Doc. 19-3 at 11).  Because plaintiff instructed the Sheriff to serve defendant, the Sheriff, not defendant, filed the Return of Service of Summons stating he had served plaintiff with process.  *Id.*; *see also* K.S.A. § 61-3005(a) ("Every officer to whom summons or other process shall be delivered for service within or without the state, shall make return thereof in writing stating the time, place and manner of service of such writ, and shall sign such officer's name to such return.")  In addition, defendant certified in the Journal Entry of Judgment that "that *the file in the above-captioned case reflects*" that plaintiff was "properly served with summons or process herein on the 13th day of September, 2012."  Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. C (Doc. 14-3) (emphasis added).  Thus, defendant did not attest that plaintiff had been served in the state court lawsuit; rather it relied upon the court file in the state court lawsuit.  Consequently, plaintiff makes no allegation that defendant filed a false return of service in the District Court of Douglas County, Kansas.

rules may render a collection a nullity, but does not 'provide[ ] a legal basis to sustain a claim that the FDCPA has been violated.'" *Id.* (quoting *Pierce v. Steven T. Rosso, P.A.*, No. 01-1244 DSDJMM, 2001 WL 34624006, at *2 (D. Minn. Dec. 21, 2001)).

Plaintiff argues that *Dillon* is different from his case for a number of reasons: the plaintiff in *Dillon* was a pro se prisoner while the defendant was represented by capable legal counsel; the plaintiff there did not file a response to defendant's motion to dismiss, or in the alternative, for summary judgment; and there was evidence that plaintiff actually was served with process. These differences, however, are not material to the gravamen of *Dillon*'s reasoning. They also do not detract from Judge Vratil's observation that no authority exists to support plaintiff's argument that defendant violated the FDCPA by pursuing a collection action without serving the debtor and that the remedy for failing to comply with service of process rules is a null judgment, not a violation of the FDCPA.

Defendant also cites four other cases from other jurisdictions as persuasive authority on this issue. In each case, the court determined that defective service on a debtor in a collection action did not constitute a FDCPA violation. Instead, the failure to effect service rendered the underlying judgment void, but did not entitle plaintiff to proceed on an FDCPA claim.

In *Pierce v. Steven T. Rosso, P.A.,* No. Civ. 01-1244 DSDJMM, 2001 WL 34624006 (D. Minn. Dec. 21, 2001), the plaintiff brought a FDCPA claim against a debt collector for failing to comply with Minnesota Rule of Civil Procedure 4.05 in serving plaintiff in an underlying debt collection action. *Id.* at *1. The court granted defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6), finding that defendant's failure to serve plaintiff in accordance with the state procedural rules did not "demonstrate[] an attempt by defendants: (1) to take an action that they were not legally entitled to take; (2) to falsely imply a threat of suit; or (3) to misrepresent papers

as legal process." *Id.* at *2 (citing 15 U.S.C. § 1692e).  The court also stated it was "unconvinced that ineffective service alone provides a legal basis to sustain a claim that the FDCPA has been violated.  Put differently, while defendants' attempt at legal service failed, this failure alone does not state a claim for a cause of action under the FDCPA." *Id.*

In *Keylard v. Mueller Anderson, P.C.*, No. 13 C 2468, 2013 WL 4501446 (N.D. Ill. Aug. 22, 2013), the plaintiff debtors sued defendant debt collectors under the FDCPA based on fraudulent service in an underlying debt collection action.  *Id.* at *1.  In the underlying collection action, the defendant debt collectors had hired a private process server who attested that he personally served plaintiffs at an address where they never lived.  *Id.*  Although the defendant debt collectors knew or should have known that the returns of service were false based on information in their own files, defendants filed the returns in the debt collection action and obtained a default judgment against plaintiffs.  *Id.*  Defendants then caused body attachments to issue, and one of the plaintiffs was arrested based on that attachment.  *Id.*  Despite these actions, the court granted defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) finding that plaintiffs had failed to state a claim for violation of § 1692f of the FDCPA.  *Id.* at *2–3.  The court determined that plaintiffs were trying to use § 1692f to enforce Illinois procedural rules that prohibit filing a knowingly false statement in an affidavit of service.  *Id.* at *3.  But no authority in § 1692f, *Keylard* concluded, supported a claim based on plaintiffs' allegations, and therefore the court dismissed plaintiffs' FDCPA claim.  *Id.*

Likewise, in this case, plaintiff contends that defendant instructed the Sheriff to serve plaintiff at an address where he had never lived and the address differed from the address reflected in the Bank's account summary.  After the Sheriff filed a Return of Service of Summons and plaintiff did not appear, defendant obtained a default judgment against plaintiff,

executed upon that judgment, and garnished plaintiff's wages in an attempt to satisfy that judgment. The failure to serve plaintiff at the correct address rendered the judgment null, which was effectuated by defendant filing the Satisfaction of Judgment acknowledging full and complete satisfaction of judgment and refunding the $1,286.97 defendant had garnished from plaintiff's wages. But these allegations do not state claim under the FDCPA for engaging in harassing, oppressive or abusive conduct in violation of 15 U.S.C. § 1692d, using false, deceptive or misleading representations or means in violation of 15 U.S.C. § 1692e,[7] or using unfair or unconscionable means in violation of 15 U.S.C. § 1692f.

Similarly, in *Scott v. Kelkris Associates, Inc.*, No. CIV. 2:10–1654 WBS DAD, 2012 WL 996578 (E.D. Cal. Mar. 23, 2012), the plaintiff sued a debt collector for violations of the FDCPA[8] after the defendant had hired a process server to serve plaintiff in the underlying debt collection action, the process server failed to tell defendant it had not effectuated service properly on plaintiff, defendant obtained a default judgment against plaintiff, and defendant attempted to satisfy the judgment by garnishing plaintiff's earnings. *Id.* at *1. The court granted defendant's motion for summary judgment on each of plaintiff's FDCPA claims, finding, first, that plaintiff did not "specify how the natural consequence of defendant's failed attempt at

---

[7]    The Court also notes that at least one court has determined that the FDCPA extends its protections only to consumers and those who have a special relationship with the consumer. *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 944 (7th Cir. 2011). In that case, the Seventh Circuit held that representations made to a state court judge did not violate 15 U.S.C. § 1692e because the FDCPA applies to misleading statements that "must have the ability to influence a *consumer's* decision." *Id.* at 942 (citation omitted). Because the Tenth Circuit has not addressed this issue, the Court declines to grant the motion on this basis. However, the Court notes that if the Tenth Circuit were to adopt *O'Rourke*'s holding, it would provide another reason to grant the motion against plaintiff's § 1692e claim. Here, the incorrect statements made by defendant about plaintiff's address were made to the state court and the Sheriff as part of the collection process, and they were not misleading statements designed to influence the consumer's decision.

[8]    In *Scott*, plaintiff alleged violations of §§ 1692b(1)-(2), 1692c(b), 1692d, 1692e, 1692e(10), and 1692f of the FDCPA.

substitute service was to harass, oppress, or abuse plaintiff," and therefore, it granted summary judgment on plaintiff's § 1692d claim. *Id.* at *5. The court next determined that plaintiff had failed to "plead how defendant's conduct was false, deceptive, or misleading" while defendant, in contrast, presented evidence that it had made an honest and good faith attempt to serve plaintiff, and therefore, the court granted summary judgment on plaintiff's § 1692e claim. *Id.* The court also granted summary judgment on plaintiff's § 1692f claim finding that no reasonable trier of fact would find that defendant's conduct was "unfair or unconscionable." *Id.* at *6.[9]

Although *Scott* was a summary judgment case, its holding is instructive to the analysis that applies here. The defendant in *Scott* relied on a process server to effectuate service on plaintiff in the underlying debt collection action, it obtained a default judgment based on incorrect information provided by the process server that plaintiff had been served (although he was never served), and then it attempted to execute on the judgment by garnishing plaintiff's wages. The court held that a jury could not find that these allegations constitute violations of §§ 1692d, 1692e, and 1692f, and therefore granted summary judgment against plaintiff. Similarly, in this case, plaintiff has failed to state a claim under the FDCPA based on his allegations that defendant served him at an incorrect address, obtained a judgment against plaintiff although service was defective, and garnished plaintiff's wages based on that judgment.

Finally, in *Mandelas v. Gordon*, 785 F. Supp. 2d 951 (W.D. Wash. 2011), plaintiff sued defendant for violating § 1692f of the FDCPA based on defendant's failure to serve him with process in an underlying state court action. *Id.* at 953–54. Defendant hired a process server to serve plaintiff in an underlying state court action to confirm an arbitration award. *Id.* at 953.

---

[9]        The *Scott* court also granted summary judgment on plaintiff's two remaining claims under the FDPCA: (1) violation of § 1692c(b) for communicating with a third party in connection with a debt; and (2) violation of § 1692b for communicating with any person for the purpose of acquiring location information. Plaintiff in this action does not bring claims under these two subsections of the FDCPA.

The process server filed a declaration stating that he had served plaintiff, but plaintiff denied service claiming he was out of state at the time of the alleged service.  *Id.*  The court in the underlying lawsuit affirmed the arbitration award and entered judgment against plaintiff.  *Id.*  Defendant then attempted to collect on the judgment by filing an application for a writ of garnishment.  *Id.* at 954.  Defendant filed an affidavit in the state court action stating that it had mailed copies of the writ of garnishment to plaintiff, but plaintiff did not receive them.  *Id.*  Plaintiff first learned about the writ of garnishment when his bank notified him of the order requiring attachment of funds from his bank account.  *Id.*  Based on these facts, the court granted summary judgment to defendant, finding that obtaining entry of judgment in the state court action without notice to plaintiff was not "unfair or unconscionable" in violation of § 1692f.  *Id.* at 956–57.  The court noted, "[I]t has found no authority supporting [plaintiff's] contention that pursuing a collection action based on a facially correct but factually ineffective return of service is unfair or unconscionable conduct under the FDCPA.  Rather, the limited case authority runs contrary to this assertion."  *Id.* at 956–57 (citing *Dillon*, 574 F. Supp. 2d at 1223–24; *Pierce*, 2001 WL 34624006, at *2).

In addition to the cases cited by defendant, the Court has located one other case supporting defendant's arguments for dismissal of plaintiff's FDCPA claims.  In *Moore v. Fein, Such, Kahn & Shepard, P.C.*, No. 12–1157 (JLL), 2012 WL 3945539 (D.N.J. June 13, 2012), the plaintiff sued the defendant for violating § 1692f of the FDCPA for taking legal action against her without properly serving her, levying on her bank account in an attempt to execute on the default judgment obtained against her, and causing her to incur a $100.00 bank fee for processing the levy.  *Id.* at *4.  The court noted that none of the enumerated conduct prohibited by the subsections of § 1692f corresponded to the conduct alleged by plaintiff.  *Id.* at *5.  The

court also acknowledged that plaintiff had cited "no case law supporting her contention that incorrect service of process, the institution of a levy in accordance with the execution of default judgment, or the incurring of a bank fee resulting from such a levy constitute 'unfair and unconscionable' conduct under § 1692f." *Id.* To the contrary, the court noted that "[t]he limited case authority that does exist runs counter to Plaintiff's assertions." *Id.* (citing *Mandelas*, 785 F. Supp. 2d at 956–57; *Dillon*, 574 F. Supp. 2d at 1223–24; *Pierce*, 2001 WL 34624006). The court therefore concluded that defendant's conduct was not unfair or unconscionable, even though the underlying judgment was later vacated by evidence that plaintiff had not been served with process. *Id.* at *6. Consequently, the court granted defendant's motion to dismiss plaintiff's § 1692f claim under Fed. R. Civ. P. 12(b)(6) for failing to state a claim. *Id.*

The Court finds these cases persuasive here. They involve similar factual settings— failing to effect service properly, obtaining default judgments, and executing upon those judgments. In these cases, the courts found no violation of 15 U.S.C. §§ 1692d, 1692e, or 1692f of the FDCPA. Moreover, plaintiff has provided this Court with no contrary authority suggesting that his allegations constitute violations of the FDCPA. Therefore, the Court follows the other federal courts that have considered similar factual scenarios and concluded that the plaintiffs' FDCPA claims failed as a matter of law. Therefore, the Court grants defendant's motion to dismiss plaintiff's FDCPA claims.

### B. Kansas Consumer Protection Act Claim

Plaintiff's second claim asserts defendant violated the Kansas Consumer Protection Act ("KCPA"). The Kansas legislature enacted the KCPA "to protect consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. § 50-623(b). The KCPA requires the Court to construe the act liberally to promote these policies. *Id.*; *Golden v. Den-Mat Corp.*, 276

P.3d 773, 789, 790 (Kan. 2012) (KCPA is remedial legislation and requires broad and liberal construction).

The KCPA prohibits deceptive and unconscionable acts in connection with a consumer transaction.  K.S.A. §§ 50–626(a); 50–627(a).  The act defines a "consumer transaction" as the "sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer; or a solicitation by a supplier with respect to any of these dispositions."  K.S.A. § 50–624(c) (emphasis added).  The term "supplier" is defined in K.S.A. § 50-624(l):

> "Supplier" means a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer.  Supplier does not include any bank, trust company or lending institution which is subject to state or federal regulation with regard to disposition of repossessed collateral by such bank, trust company or lending institution.

In *State ex rel. Miller v. Midwest Serv. Bureau of Topeka, Inc.*, 623 P.2d 1343 (Kan. 1981), the Kansas Supreme Court held that an independent debt collection agency is a "supplier" under the KCPA under certain specific conditions.  The Supreme Court explained what it meant:

> [A]n independent debt collection agency falls within the definition of a 'supplier' and is subject to the provisions of the KCPA, if it is found that three specific conditions exist:
>
> > (1) The debt sought to be enforced came into being as a result of a consumer transaction;
> >
> > (2) The parties to the original consumer transaction were a "supplier" and a "consumer" as defined in the act; and
> >
> > (3) The conduct complained of, either deceptive or unconscionable, occurred during the collection of, or an attempt to collect, a debt which arose from the consumer transaction and was owed by the consumer to the original supplier.

*Miller*, 623 P.2d at 1349.  Our Court has applied the *Miller* test to a law firm engaged in collection activities similar to defendant in this case, which attempted to collect a debt from the

17

plaintiff on behalf of the Bank. *See Rachoza v. Gallas & Schultz*, No. CIV. A. 97–2264–EEO, 1998 WL 171280, at *6 (D. Kan. Mar. 23, 1998) (finding that the defendant law firm met the definition of "supplier" because each of the three requirements of *Miller* were satisfied). Thus, the Court looks to the *Miller* test to determine if defendant is a "supplier" under the KCPA and, therefore, subject to the requirements of that act.

Defendant assumes for the purposes of this motion that the first element of *Miller* is satisfied—that the debt sought to be enforced came into being as a result of a consumer transaction. But defendant asserts that plaintiff's KCPA claim fails in this case because he cannot meet the second and third requirements of *Miller*. Defendant argues that plaintiff fails to satisfy the second requirement because the parties to the original consumer transaction—the personal loan made by the Bank to plaintiff—were not a "supplier" and a "consumer" as defined by the act. Defendant also argues that plaintiff fails to meet the third requirement because the conduct alleged by plaintiff is not deceptive or unconscionable and therefore not actionable under the KCPA. The Court addresses each argument in turn below.

### 1. Were the parties to the original consumer transaction a "supplier" and a "consumer" as defined in the KCPA?

The Court agrees with defendant that plaintiff cannot meet the second requirement of *Miller* if the parties to the original consumer transaction were not a "supplier" and "consumer" as the KCPA defines those terms. Here, the original consumer transaction is the personal loan made by the Bank to plaintiff. Defendant argues that the Bank is not a "supplier" under the KCPA, and therefore the original consumer transaction was not between a "supplier" and "consumer" as defined in the act.

In support of this argument, defendant relies on the KCPA's definition of supplier which excludes "any bank, trust company or lending institution which is subject to state or federal

regulation with regard to disposition of repossessed collateral by such bank, trust company or lending institution." K.S.A. § 50-624(l). At least two courts have construed this statute to exclude banks and lending institutions entirely from the definition of "supplier" if they are subject to state and federal regulations. *See Kastner v. Intrust Bank*, No. 10–1012–EFM, 2011 WL 721483, at *2 n.3 (D. Kan. Feb. 22, 2011) ("K.S.A. § 50–624(l) appears to exclude banks and lending institutions that are subject to state and federal regulation from the definition of 'supplier' and the court assumes that defendant Intrust Bank satisfies this exception."); *see also In re Long*, Bankr. No. 09–12827, Adversary No. 09–5303, 2011 WL 976460, at *7 (D. Kan. Mar. 1, 2011) (explaining that under the KCPA, "[a] 'supplier' is a 'manufacturer, distributor, dealer, seller, lessor, assignor, or other person' who engages in 'consumer transactions,' but the definition of supplier does not include any 'bank, trust company or lending institution' that is state or federally regulated" and holding that a company satisfied the definition of "supplier" where it was not "a regulated lending entity"). The Court concludes that the Bank is not a supplier under the KCPA if it is subject to state or federal regulation.[10]

However, the record currently before the Court on the motion to dismiss does not allow the Court to determine this dispositive issue. To demonstrate that the Bank is not a supplier under this definition, defendant relies on the Affidavit of Bryan Butell, Executive Vice President of the Bank, where he states: "[The Bank] is a bank, trust company, or lending institution which is subject to state or federal regulation with regard to disposition of repossessed collateral by such bank, trust company, or lending institution." Ex. A to Def.'s Mem. in Supp. of Mot. to

---

[10]     The Court rejects plaintiff's reliance on *York v. InTrust Bank, N.A.*, 962 P.2d 405 (Kan. 1998), where the Kansas Supreme Court held under an earlier version of the KCPA that a bank was a "supplier" where, in the ordinary course of its banking business, the bank seized collateral on loans it made and then disposed of that collateral. *Id.* at 419–20. It appears that the Kansas legislature's amendment to the KCPA in 2005 supersedes this holding by adding the exclusion for state or federally regulated lending institutions under the definition of "supplier" in K.S.A. § 50-624(l).

Dismiss (Doc. 14-1 at ¶ 12).  But, as explained above, the Court cannot consider this affidavit, as a matter outside of the pleadings, on a motion to dismiss without converting the motion to summary judgment.  Fed. R. Civ. P. 12(d).  Before converting the motion to summary judgment, the Court must give all parties "a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  Because plaintiff has not had an opportunity to present all material pertinent to the issue of whether the Bank is a state or federally regulated institution, the Court declines to convert the motion to summary judgment at this stage.

However, because this issue is dispositive, the Court stays the case on all issues except for the limited issue of whether the Bank is a state or federally regulated institution exempted from the definition of "supplier" under the KCPA.  If necessary, the parties may conduct discovery on this limited issue, and afterwards, submit summary judgment briefing to the Court on this single issue.  The Court provides a briefing schedule below.

### 2.  Was the conduct complained of deceptive or unconscionable?

Defendant next argues that plaintiff fails to meet the third requirement of the *Miller* test because the alleged conduct was neither deceptive nor unconscionable as a matter of law.  Under the third requirement of *Miller*, the KCPA applies if "[t]he conduct complained of, either deceptive or unconscionable, occurred during the collection of, or an attempt to collect, a debt which arose from the consumer transaction and was owed by the consumer to the original supplier."  *Miller*, 623 P.2d at 1349.  Moreover, one of the purposes of the KCPA is "to protect consumers from suppliers who commit deceptive and unconscionable practices."  K.S.A. § 50-623(b).

Here, defendant argues that the alleged conduct was not deceptive or unconscionable as a matter of law because other courts have determined that failing to effect service in a debt

collection action, obtaining a default judgment based on that improper service, and garnishing wages in an attempt to satisfy that judgment are not deceptive or unconscionable acts under the FDCPA.  Defendant relies on the cases discussed above holding similar facts would not support a FDCPA claim.  In several of those cases, the courts determined that plaintiffs had failed to state a claim as a matter of law, and therefore the court dismissed the FDCPA action under Fed. R. Civ. P. 12(b)(6).  *See*, *e.g.*, *Keylard v. Mueller Anderson, P.C.*, No. 13 C 2468, 2013 WL 4501446, at *2–3 (N.D. Ill. Aug. 22, 2013); *Moore v. Fein, Such, Kahn & Shepard, P.C.*, No. 12–1157 (JLL), 2012 WL 3945539, at *6 (D.N.J. June 13, 2012); *Pierce v. Steven T. Rosso, P.A.*, No. Civ. 01-1244 DSDJMM, 2001 WL 34624006, at *2 (D. Minn. Dec. 21, 2001).  And in two of those cases, the courts found that the plaintiffs had failed to state a claim under § 1692f for using "unfair or unconscionable means" to collect or attempt to collect a debt.  *See Keylard*, 2013 WL 4501446, at *2–3; *Moore*, 2012 WL 3945539, at *6.

Plaintiff alleges that defendant violated two sections of the KCPA.  First, plaintiff asserts that defendant engaged in deceptive acts or practices in connection with a consumer transaction in violation of K.S.A. § 50-626.  Pl.'s Sec. Am. Compl. (Doc. 11 at ¶ 65).  Second, plaintiff claims that defendant engaged in unconscionable acts or practices in connection with a consumer transaction in violation of K.S.A. § 50-627.  *Id.* (Doc. 11 at ¶ 66).  In Kansas, "[t]he unconscionability of an act or practice is a question of law for the court."  *Miller*, 623 P.2d at 1349; *see also Waggener v. Seever Sys., Inc.*, 664 P.2d 813, 818 (Kan. 1983).  Because the Court has already determined that plaintiff has failed to state a claim against defendant under § 1692f of the FDCPA for using "unfair or unconscionable means" to collect or attempt to collect a debt, the Court also concludes that plaintiff's allegations fail to state a claim under K.S.A. § 50-627 for engaging in "unconscionable acts" in a consumer transaction.

But the Court declines to reach the same conclusion for plaintiff's claim under K.S.A. § 50-626 alleging that defendant engaged in deceptive acts and practices in violation of the KCPA. In Kansas, whether a deceptive act has been committed in violation of the KCPA is a question for the jury to determine. *See Waggener*, 664 P.2d at 818 (explaining that whether an act is unconscionable in violation of the KCPA is a question of law for the court but whether the act is deceptive in violation of the KCPA is a question for the jury's determination). Thus, the Court cannot determine as a matter of law that plaintiff has failed to state a claim against defendant for committing deceptive acts in violation of the KCPA. Consequently, the Court denies defendant's motion to dismiss plaintiff's claim under K.S.A. § 50-626.

The Court has also reviewed defendant's public policy arguments, but finds them unpersuasive. Defendant argues that plaintiff has recovered his damages in this case because defendant reimbursed plaintiff for the entire amount of money collected from him. Therefore, defendant contends, plaintiff has not filed this action to promote consumer protection but rather to seek punitive remedies. However, as noted above, the KCPA is remedial legislation, and the Court must construe this act liberally. *Golden v. Den–Mat Corp.*, 276 P.3d 773, 789, 790 (Kan. 2012). Therefore, the Court will not foreclose plaintiff's KCPA claim based on defendant's public policy arguments.

## IV.     Conclusion

The Court grants in part and denies in part defendant's motion to dismiss. For the reasons explained above, the Court concludes that plaintiff has failed to state a claim under the FDCPA upon which relief can be granted. Therefore, the Court grants defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) against plaintiff's FDCPA claim.

The Court also finds that plaintiff has failed to state a claim under the KCPA for engaging in unconscionable acts in violation of K.S.A. § 50-627.  Therefore, the Court grants defendant's motion to dismiss plaintiff's claim under K.S.A. § 50-627.  The Court, however, denies defendant's motion to dismiss plaintiff's KCPA claim under K.S.A. § 50-626 for engaging in deceptive acts and practices.

The Court also denies defendant's motion to dismiss the KCPA claims on the basis that the parties to the underlying consumer transaction were not a "consumer" or "supplier" as defined by the KCPA.  As explained above, the Court cannot determine that the Bank was not a "supplier" under the KCPA based on the record before it on the motion to dismiss.  Therefore, the Court orders that the case is stayed on all issues except for the limited issue of whether the Bank is a state or federally regulated institution exempted from the definition of "supplier" under the KCPA and orders the parties to submit summary judgment briefing to the Court on this single issue in accordance with the schedule provided below.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the defendants' Motion to Dismiss (Doc. 13) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** the case is stayed on all issues except for the limited issue of whether the Bank is a state or federally regulated institution exempted from the definition of "supplier" under the KCPA.  The parties may conduct discovery on this limited issue and must file dispositive motions on this issue **no later than November 20, 2014.**

**IT IS SO ORDERED.**

**Dated this _1st_ day of October, 2014, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
